UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON, | No. 2:16-cv-02414-KJM-DB |
| Plaintiff, | |
| v. | ORDER |
| LAURIE ELIZABETH TACKETT, et al., | |
| Defendants. | |

      A disabled plaintiff sues a restaurant based on its allegedly inaccessible parking lot. Defendants move to dismiss for lack of subject matter jurisdiction. The court submitted the case without a hearing. ECF No. 19. As discussed below, the court DENIES defendants' motion.

I.     PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

      Plaintiff filed the operative complaint on October 10, 2016. Compl., ECF No. 1. The complaint alleges defendants violated: (1) the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (ADA); and (2) the Unruh Civil Rights Act, Cal. Civ. Code sections 51–53. *See generally* Compl.

      The following factual allegations give rise to plaintiff's claims. Plaintiff is a level C-5 quadriplegic who has trouble using his hands and cannot walk. Compl. ¶ 1. He uses a wheelchair and has a specially equipped van. *Id.*

Defendants Laurie Elizabeth Tackett and Shawn D. Tackett own Burger Barn, a restaurant in Pollock Pines, California. *Id.* ¶¶ 2–16. On several occasions, including in February 2015, May 2016, June 2016, and July 2016, plaintiff ate at Burger Barn. *Id.* ¶ 21. When attempting to park, plaintiff encountered parking-lot related barriers. *Id.* ¶ 24. First, the parking space for persons with disabilities was 90 inches wide, but the access aisle was just 86 inches wide. *Id.* Second, the parking space's dividing lines were faded and barely discernable. *Id.* ¶ 26. Plaintiff contends he encountered these barriers at least twice, in February 2015 and May 2016. *Id.* ¶¶ 32, 33. Plaintiff alleges these barriers have caused him difficulty and frustration and will deter him from visiting in the future. *Id.* ¶ 38.[1]

Defendants contend they fixed their parking lot to comply with the ADA and the Unruh Act after receiving plaintiff's complaint. Mot. 2, ECF No. 14-1. Specifically, they contend they repaved and restriped the accessible parking space. *Id.* at 3. After modification, defendants moved to dismiss for lack of subject matter jurisdiction. *See generally id.* Defendants specifically contend plaintiff lacks standing and his claims are moot. *Id.* at 2–5. Plaintiff opposed. Opp'n, ECF No. 15.

Because standing and mootness both pertain to a federal court's Article III subject-matter jurisdiction, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

II. LEGAL STANDARD

Cases are presumed to fall outside a federal court's limited jurisdiction until proven otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377–78 (1994). Either party may challenge subject matter jurisdiction, or the court can address the matter *sua sponte*. Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(h)(3); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999). A Rule 12(b)(1) jurisdictional attack may be either facial or

---

[1] Plaintiff also suggests defendants' door hardware posed a violation, and notes in his opposition the claim has been rendered moot because "plaintiff is satisfied with the newly installed door hardware." Opp'n at 13 n. 5. A claim based on noncompliant door hardware does not appear in the operative complaint, *see generally* Compl., and so the court does not address it here.

factual. *White*, 227 F.3d at 1242. In a facial attack, the court assumes the complaint's allegations are true and assesses jurisdiction in a light most favorable to plaintiff. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

By contrast, a factual attack challenges the veracity of plaintiff's jurisdictional facts, or contends a necessary jurisdictional fact is absent. *Id.* The allegations are not presumed to be true and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

Jurisdictional dismissal is "exceptional" and warranted only "'where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous.'" *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). The Ninth Circuit has held that a "[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action.'" *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). "Normally, the question of jurisdiction and the merits of an action will be considered intertwined where . . . a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Id.* (quotation omitted).

III. DISCUSSION

Defendants launch a factual attack on jurisdiction. *McCarthy*, 850 F.2d 560. To support their motion to dismiss based on standing and mootness, defendants contend they remedied the barriers giving rise to plaintiff's claims, relying on their own affidavit testimony.

Mot. at 2; Tackett Decl. ¶¶ 7–8, ECF No. 14-3. The court discusses the standing and mootness arguments in turn.

A. <u>Standing</u>

Standing is an "essential component" of the case or controversy requirement of Article III, § 2 of the United States Constitution. *Carroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003). To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that a favorable decision would redress the injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The injury must not be conjectural or hypothetical; "the plaintiff must demonstrate a real or immediate threat of an irreparable injury." *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1100 (9th Cir. 2000). When evaluating these three elements, courts must look at the facts "as they exist at the time the complaint was filed." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 568 n.4 (1992).

Here, the plaintiff has alleged standing. When the complaint was filed, plaintiff alleged he previously visited Burger Barn but could not fully enjoy the facility because defendants did not adequately maintain a van-accessible parking lot. Compl. ¶¶ 24–26, 28, 32. This failure, plaintiff contends, violated the ADA and California's Unruh Act. *Id.* ¶¶ 45, 53. Plaintiff's allegations satisfy standing requirements; he adequately alleges injury in fact traceable to defendants' conduct that a favorable decision could resolve. *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008) (plaintiff had standing where plaintiff visited a public accommodation on prior occasion and is currently deterred from visiting that accommodation by accessibility barriers, establishing that plaintiff's injury is actual or imminent).

Defendants argue their remedial measures, initiated promptly upon learning of plaintiff's claims, undermine plaintiff's standing to sue. Mot. at 2. Defendants' argument is misguided because, as noted, courts assess standing at the time the complaint is filed, not after. *See Lujan*, 504 U.S. at 569 n.4; *cf. TOC, Inc.*, 528 U.S. at 175 ("[W]e have held that citizens lack

4

statutory standing under § 505(a) to sue for violations that have ceased by the time the complaint is filed.").

Because plaintiff had standing when he filed the operative complaint he continues to have standing now. The question, rather, is whether defendants' remedial action has mooted plaintiff's claims.

B.     Mootness

While defendants concede their parking lot did not previously meet accessibility standards, they contend plaintiff's claim is moot because, after receiving the complaint, defendants took "immediate action" to bring their parking lot into compliance. Mot. at 2. In opposition, plaintiff contends defendants have not proven this remediation, and even if they have, defendants have not shown their failure to comply with the ADA will not recur. Opp'n at 11–12.

Claims are mooted "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (internal quotation marks omitted). Stated another way, a case is moot when "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" at issue. *L.A. Cnty. v. Davis*, 440 U.S. 625, 631 (1979).

Courts have long recognized a "voluntary cessation exception" to mootness. *Rosemere Neighborhood Ass'n v. U.S. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009). Under this exception, when a defendant's voluntary cessation of a challenged activity is the basis for mootness, it is the defendant's burden to show "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *TOC, Inc.*, 528 U.S. at 189. "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness," *id.*, "otherwise [it] would simply be free to 'return to ([its]) old ways' after the threat of a lawsuit had passed," *Armster v. U.S. Dist. Court for Cent. Dist. of Cal.*, 806 F.2d 1347, 1359 (9th Cir. 1986) (parenthesis in original).

Several district courts have assessed voluntary cessation where, as here, defendants modified the parking lot in response to plaintiff's claims and, have found potential

recurrence doubtful because "structural modifications . . . are unlikely to be altered in the future." *Indep. Living Res. v. Or. Arena Corp.*, 982 F.Supp. 698, 774 (D.Or. 1997) (concluding parking lot modifications mooted ADA claim because defendants would be subject to the "high cost of litigation" if non-compliance recurred) *declined to follow on different grounds by Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1024 (9th Cir. 2008); *see also Grove v. De La Cruz*, 407 F.Supp.2d 1126, 1130–31 (C.D. Cal. 2005) (restaurant's installation of grab rails mooted plaintiff's ADA complaint requesting installation of such rails; court found no basis to conclude the restaurant would repeat the challenged conduct).

Yet other courts, including the Ninth Circuit, have probed more deeply, questioning whether defendants could simply remove or fail to maintain the structural modification after dismissal. One factor courts evaluate in predicting possible recurrence is the defendant's history of compliance. In *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 860 (N.D. Cal. 2011), for example, the court held despite the restaurant's structural modifications, its past failure to follow its own accessibility policies to ensure ADA compliance led the court to conclude discrimination would recur. *Id.* The Ninth Circuit, in a case based on different claims and facts, engaged in a fact intensive analysis and found defendants in the case were not likely to engage in recurring violations because they were subject to a federally-mandated policy requiring a biological opinion or plan that would not expire for three years. *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1124 (9th Cir. 1997).

In evaluating the likelihood of recurrence, courts also consider whether defendants have spent considerable sums of money altering their properties to achieve ADA compliance. *See e.g.*, *Harty v. N. Lauderdale Supermarket, Inc.*, No. 14–62945, 2015 WL 4638590, at *5 (S.D. Fla. Aug. 4, 2015) ("It would be absurd to expect Defendant to spend money to undo the structural modifications it just paid to implement."); *Kennedy v. Nick Corcokius Enters., Inc.*, No. 15–80642, 2015 WL 7253049, at *4 (S.D. Fla. Nov. 17, 2015) (finding recurrence doubtful where "[d]efendant has admitted liability as to [ADA] claims and has invested time and money in remedying these twenty-five separate violations."); *Houston v. 7-Eleven, Inc.*, No. 13–60004, 2014 WL 351970, at *2 (S.D. Fla. Jan. 31, 2014). In *Houston*, the court concluded the

defendants' discrimination was not likely to recur because defendants had spent over $30,000 to upgrade their restaurant, including "repaving and restriping the parking lot and enlarging the existing disabled parking space and access isle, remodeling the restroom to make it larger, relocating the sink, installing a new tile floor, and relocating the back storage room at the store." *Houston*, 2014 WL 351970, at *2.

Here, the court concludes defendants have not met their "heavy burden" to show their challenged conduct will not recur. Defendants contend plaintiff's claim is moot because they have repaved and restriped the accessible parking space. Mot. at 3; Tackett Decl. ¶ 8, ECF No. 14-3. Defendants cite to the declaration of William Zellmer, a building code interpretation specialist, to argue their modifications amount to compliance. *See* Mot. at 2; *see also* Zellmer Decl., ECF No. 14-2. Zellmer avers, "I have determined that the Burger Barn meets all applicable construction-related accessibility standards." Zellmer Decl. ¶ 10. But because this expert opinion resolves an "ultimate issue" of liability, the court may not rely on it. *See Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002) ("[A]n expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law"), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014). Without additional evidence or authority, defendants' arguments are unavailing.

Additionally, plaintiff has pointed to evidence convincing the court defendants' conduct may recur. *Armster*, 806 F.2d at 1359. Plaintiff alleges before he filed suit, defendants did not maintain their parking lot on at least two occasions, Compl. ¶¶ 32–34. Accordingly, defendants' failure to address a claimed history of ADA non-compliance, coupled with the common sense observation that repaved and restriped parking spaces fade over time and thus require repeated resurfacing, it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *TOC, Inc.*, 528 U.S. at 189.

On the record before it, the court DENIES defendants' motion.

/////

/////

/////

IV. <u>CONCLUSION</u>

The court DENIES defendants' motion to dismiss.

This order resolves ECF No. 14-1.

IT IS SO ORDERED.

DATED: July 5, 2017.

_____
UNITED STATES DISTRICT JUDGE